UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____ - Civ.

SANDRA DELVIN, as Personal
Representative for the Estate of
CARL FROEHLICH,

       Decedent ,

vs.

CELEBRITY CRUISES, INC.,

       Defendants.
_____/

## COMPLAINT FOR WRONGFUL DEATH AND DAMAGES

**COMES NOW** the Plaintiff, SANDRA DELVIN as wife of CARL FROCHLICH, by and through the undersigned counsel, as and for her Complaint against the Defendant, CELEBRITY CRUISES, and alleges upon information and belief as follows:

1. This is an action for wrongful death under both Florida law and general maritime law.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 insofar as there is diversity of citizenship between the Decedent and defendant and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 insofar as this matter involves one or more claims which are maritime in nature and come under this Court's admiralty jurisdiction.

3. Venue is proper under 28 U.S.C. § 1391 insofar as the defendant resides or may be found within this District.

4. At all times material hereto, Plaintiff, SANDRA DELVIN, is the surviving widow of CARL FROEHLICH, deceased, and is or will be duly appointed Personal Representative for the Estate of CARL FROEHLICH.

5. At all times material hereto, Plaintiff, SANDRA DELVIN, as Personal Representative for the Estate of CARL FROEHLICH, decedent, was and is a resident of the State of California.

6. At all times material hereto, Defendant, Celebrity Cruises ("Celebrity") was and is, a foreign corporation with its principal place of business in Miami-Dade County, Florida.

7. At all times material hereto, Edwin Alba, was a naturalist employed by the Defendant, Celebrity, and was at all times material acting within the scope and course of his employment with Celebrity.

8. At all times material hereto, the Defendant, Celebrity, was the owner and/or operator of the cruise ship *Xpedition*.

9. On or about July 6, 2015, Decedent was a passenger on the *Xpedition*, which was docked in the Galapagos Islands.

10. That on July 6, 2015, while on an off shore excursion Decedent was swimming in strong currents when he began to suffer from a medical condition with symptoms similar to those of someone suffering from a heart attack.

11. That there were no lifeguards or naturalists supervising the area where the Froehlich Family was swimming.

12. Decedent's daughter signaled for Celebrity employees to help her get the Decedent back to shore, but all of her attempts were unsuccessful.

13. After an unreasonable delay, Celebrity cruise line employees finally responded to the emergency and attempted to rescue the Decedent. As a result of his condition, Decedent was incapacitated and had to be taken back to the ship for medical assistance.

14. During this time, Celebrity employees did not render any medical assistance to Decedent because Celebrity failed to properly train its employees on how to respond to emergency situations, failed to maintain any defibrillators in the area nearby in the event of an emergency, and/or the first aid equipment was not labeled appropriately or readily accessible for use.

15. Edwin Alba, the naturalist in charge of the excursion that Decedent was on, placed the Decedent on one of Defendant's Zodiac and transported him back to the *Xpedition*.

16. During this time Edwin Alba failed to provide any emergency response aid or assistance to the Decedent once he was aboard the Zodiac. Edwin Alba was not properly trained and/or competent to handle any sort of emergency situation.

17. Defendant failed to equip the Zodiac with defibrillators and/or any other first aid equipment, and failed to properly train its employees on how to handle emergency situations such as this one.

18. Once back on board the *Xpedition,* the Defendant failed to provide Decedent with the appropriate medical treatment given the circumstances. Defendant also refused to permit Sandra Delvin to retrieve Decedent's medication from their Stateroom aboard the ship.

19. As a result of Celebrity's negligent and wrongful acts, its delay in responding to the emergency, its failure to have any first response equipment at hand, its failure to have properly trained employees, its failure to provide CPR, and/or any other first response aid, and its failure to provide proper medical attention, Mr. Froehlich died on July 6, 2015.

## COUNT I- NEGLIGENCE

20. Plaintiff re-alleges and readopts the allegations in paragraphs 1-19 as though alleged originally herein.

21. Defendant owed a duty to Decedent to exercise ordinary reasonable care under the circumstances for their safety and to provide reasonably safe passage under the circumstances.

22. On or about July 6, 2015, Celebrity and/or its agents, servants, and/or employees breached their duty to provide Decedent with reasonable care under the circumstances.

23. Decedent was injured due to the fault and/or negligence of Celebrity and/or its agents, servants, and/or employees for acts and/or omissions that include, but are not limited to the following:

   a. Failure to provide a safe excursion;
   b. Failure to properly supervise and oversee the excursion, marketed, advertised, offered, and sold to its guests;
   c. Failure to adequately monitor excursion providers so as to ensure that the excursion tours were reasonably safe for cruise passengers and the Decedent;
   d. Failure to adequately warn Decedent of the dangers of participating in the subject excursion;
   e. Failure to adequately determine physical limitations which should be associated with the subject excursion;

    f. Failure to adequately communicate physical limitations which are and/or should be associated with subject excursion;

    g. Failure to adequately monitor excursion providers as to ensure that the operations of excursion tours were reasonably safe for Decedent and cruise passengers;

    h. Failure to ensure that properly trained and supervised persons operated the subject excursion;

    i. Having a shore excursion that was not competently operated

    j. Failure to provide excursion with properly trained operators and personnel

    k. Failure to promulgate and/r enforce adequate policies and procedures concerning medical emergencies during the subject excursion

    l. Failure to provide prompt, proper, or adequate first aid to Decedent;

    m. Failure to assist Decedent to obtain adequate medical care on a timely basis

    n. Failure to require shore excursion operator to actively monitor passengers and Decedent during subject excursion

    o. Failure to adequately ascertain level of activity and/or danger the subject shore excursion posed to passengers.

    p. Failing to maintain any defibrillators in the area nearby in the event of an emergency.

    q. Failing to properly label the emergency first aid equipment or have it readily accessible for use

    r. Failure to equip the zodiac with defibrillators and/or any first aid equipment.

    s. Failing to use reasonable care under the circumstances.

24. As a direct and proximate result of the negligence of Celebrity, the Mr. Froehlich wrongfully died on July 6, 2015.

25. As a direct result of the Defendant's negligence, the Plaintiff, SANDRA DELVIN as wife of her deceased husband, CARL FROEHLICH, has in the past and will in the future suffer losses, including medical, funeral and burial expenses due to her husband's death that have become a charge of her Estate and/or that have been paid on behalf of the decedent, all damages allowable under Florida Law and Florida's Wrongful Death Act, loss of net accumulations of the Estate, loss

of consortium, guidance, and instruction, loss of support and services, and mental pain and suffering.

**WHEREFORE**, SANDRA DELVIN as Personal Representative for the Estate of CARL FROEHLICH, demands judgment against the Defendant, CELEBRITY CRUISES, INC., for damages, costs of this action, and other further equitable and legal relief as this Court may deem appropriate, along with a trial by jury on all issues so triable.

## COUNT II – WRONGFUL DEATH

26. Plaintiff re-alleges and readopts the allegations in paragraphs 1-19 as though alleged originally herein.

27. This is an action for wrongful death pursuant to the Florida Wrongful Death Act, §§768.16-768.27, Florida Statutes.

28. Defendant owed a duty to Decedent to exercise ordinary reasonable care under the circumstances for their safety and to provide reasonably safe passage under the circumstances.

29. Defendant had a duty to Decedent to properly maintain and operate the *Xpedition*.

30. Defendant had a duty to the Decedent to act reasonably with respect to the health and safety of the Decedent under the circumstances.

31. Defendant had a duty to act consistent with, and comply with, all regulations and laws pertaining to the operations of cruise ships.

32. Defendant had a duty to Decedent to maintain the *Xpedition* under the circumstances in a manner that did not threaten Decedent 's health and safety.

33. Defendant was negligent, and breached the duties owed to Decedent in one or more of the following ways:

   a. Failure to provide a safe excursion
   b. Failure to properly supervise and oversee the excursion, marketed, advertised, offered, and sold to its guests;
   c. Failure to adequately monitor excursion providers so as to ensure that the excursion tours were reasonably safe for cruise passengers and the Decedent;
   d. Failure to adequately warn Decedent of the dangers of participating in the subject excursion;
   e. Failure to adequately determine physical limitations which should be associated with the subject excursion;
   f. Failure to adequately communicate physical limitations which are and/or should be associated with subject excursion;
   g. Failure to adequately monitor excursion providers as to ensure that the operations of excursion tours were reasonably safe for Decedent and cruise passengers;
   h. Failure to ensure that properly trained and supervised persons operated the subject excursion;
   i. Having a shore excursion that was not competently operated
   j. Failure to provide excursion with properly trained operators and personnel
   k. Failure to promulgate and/r enforce adequate policies and procedures concerning medical emergencies during the subject excursion
   l. Failing to use reasonable care under the circumstances.

34. As a direct and proximate result of Defendant's breach, Decedent was incapacitated and did not receive timely, adequate, and/or appropriate medical attention.

35. Defendant failed to train, supervise, hire and/or retain employees to deal with foreseeable risks and/or hazards during shore excursions.

36. Additionally, Defendant owed a duty to Decedent to provide prompt and appropriate medical care under the circumstances following Decedent's arising medical conditioned that manifested while on the excursion.

37. Specifically, that the Defendant was negligent in the following ways:

   a. Failure to provide prompt, proper, or adequate first aid to Decedent;
   b. Failure to timely diagnose and appropriately treat Decedent;
   c. Failing to recognize and treat Decedent's heart attack.
   d. Failure to assist Decedent to obtain adequate medical care on a timely basis
   e. Failure to require shore excursion operator to actively monitor passengers and Decedent during subject excursion
   f. Failure to adequately ascertain level of activity and/or danger the subject shore excursion posed to passengers.
   g. Failing to maintain any defibrillators in the area nearby in the event of an emergency.
   h. Failing to properly label the emergency first aid equipment or have it readily accessible for use
   i. Failure to equip the Zodiac with defibrillators and/or any first aid equipment.
   j. Failing to use reasonable care under the circumstances.

38. As a direct and proximate cause of the negligence of the Defendant, the Decedent died due to the delay in providing prompt appropriate care and treatment.

39. As a result of this negligence on the part of the Defendant, by and through the acts of its employees or agents, Decedent passed away.

40. As a direct result of the Defendant's negligence, the Plaintiff, SANDRA DELVIN as wife of her deceased husband, CARL FROEHLICH, has in the past and will in the future suffer losses, including medical, funeral and burial expenses due to her husband's death that have

become a charge of her Estate and/or that have been paid on behalf of the decedent, all damages allowable under Florida Law and Florida's Wrongful Death Act, loss of net accumulations of the Estate, loss of consortium, guidance, and instruction, loss of support and services, and mental pain and suffering

**WHEREFORE**, the Plaintiff, SANDRA DELVIN, as Personal Representative for the Estate of CARL FROEHLICH demands judgment against the Defendant, CELEBRITY CRUISES, INC., for damages, costs of this action, and other further equitable and legal relief as this Court may deem appropriate, along with a trial by jury on all issues so triable.

### COUNT III – NEGLIGENT MEDICAL CARE AND TREATMENT

41. Plaintiff re-alleges and readopts the allegations in paragraphs 1-19 as though alleged originally herein.

42. The Defendant had a duty to Decedent to provide prompt and appropriate medical care while traveling aboard the *Xpedition.*

43. The Defendant, Celebrity, by and through the acts of its employees or agents, was negligent, in one or more of the following ways:

   a. In failing to properly assess the condition of the Decedent;

   b. In failing to have a doctor assess the patient;

   c. In failing to timely diagnose and appropriately treat the patient;

   d. In failing to evacuate the patient from the vessel for further care in a timely manner;

   e. In deviating from the standard of care for patients in Decedent's circumstances who had suffered a heart attack.

44. As a direct and proximate result of the negligence of the Defendant, as described above, the Decedent's condition went untreated to the point that he died.

45. As a direct result of the Defendant's negligence, SANDRA DELVIN as wife of her deceased husband, CARL FROEHLICH, has in the past and will in the future suffer losses, including medical, funeral and burial expenses due to her husband's death that have become a charge of her Estate and/or that have been paid on behalf of the decedent, all damages allowable under Florida Law and Florida's Wrongful Death Act, loss of net accumulations of the Estate, loss of consortium, guidance, and instruction, loss of support and services, and mental pain and suffering

**WHEREFORE**, SANDRA DELVIN, as Personal Representative for the Estate of CARL FROEHLICH, demands judgment against the Defendant, CELEBRITY CRUISES, INC., for damages, costs of this action, and other further equitable and legal relief as this Court may deem appropriate, along with a trial by jury on all issues so triable.

**COUNT IV – NEGLIGENCE OF CELEBRITY BASED UPON APPARENT AGENCY**

46. Plaintiff re-alleges and readopts the allegations in paragraphs 1-19 as though alleged originally herein.

47. At all times material hereto, the Defendant, Celebrity, held out its medical staff, including its doctors and nurses, as being its employees who work in the Defendant's "medical centers" on the vessel. The Defendant promotes its medical staff and represents them as being their employees through brochures, internet advertising, and on the vessel. That Defendant held out its staff as being direct employees or its actual agents.

48. The Defendant promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line as part of a marketing tool to induce passengers such as the Decedent to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

49. The Defendant manifested to the Decedent in this case that its medical staff were acting as its employees and/or actual agents, including but not limited to the following:

50. The medical staff were given uniforms to wear which include name tags and which have the Celebrity name and logo. Said uniforms were required by Celebrity to be worn by the staff.

51. That the doctor is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

52. The ship's medical staff was held out to the passengers by the Defendant as being members of the ship's crew.

53. The Defendant put the ship's medical staff under the command of the ship's superior officers, including the Master of the ship.

54. The cruise line represents to immigration authorities that the medical staff are members of the ship's crew.

55. The ship's medical staff is permitted to eat with the ship's crew.

56. Defendant's apparent agents owed a duty to Decedent to provide prompt and appropriate medical care under the circumstances following the heart attack he suffered while on a shore excursion.

57. The ship's medical staff provides services in the ship's "medical centers" and the Decedent was required to go to the ship's medical center for his medical condition.

58. The Decedent was seen by the ship's medical staff.

59. Based on the foregoing, the Decedent believed, and was reasonable in his belief, that the ship's medical staff was acting as direct employees or actual agents on behalf of the Defendant and was never given any reason to believe otherwise.

60. The Decedent relied to his detriment on his belief that the physician and nurse were direct employees or actual agents of the Defendant in that he relied on them to provide the appropriate medical treatment.

61. As a direct and proximate result of the negligence of the Defendant, by and through the acts of its apparent agents, as described above, the Decedent died as a result of his untreated medical condition.

62. As a direct result of the Defendant's negligence, the Plaintiff, SANDRA DELVIN as wife of her deceased husband, CARL FROEHLICH, has in the past and will in the future suffer losses, including medical, funeral and burial expenses due to her husband's death that have become a charge of her Estate and/or that have been paid on behalf of the decedent, all damages allowable under Florida Law and Florida's Wrongful Death Act, loss of net accumulations of the Estate, loss of consortium, guidance, and instruction, loss of support and services, and mental pain and suffering.

**WHEREFORE**, SANDRA DELVIN, as Personal Representative for the Estate of CARL FROEHLICH demands judgment against the Defendant, CELEBRITY CRUISES, INC., for damages, costs of this action, and other further equitable and legal relief as this Court may deem appropriate, along with a trial by jury on all issues so triable.

### COUNT V – NEGLIGENT HIRING, RETENTION, AND TRAINING BY CELEBRITY AS TO THE *XPEDITION'S* STAFF

63. Plaintiff re-alleges and readopts the allegations in paragraphs 1-19 as though alleged originally herein.

64. It is foreseeable to the Defendant that passengers like the Decedent would suffer a heart attack, and/or other emergency medical conditions, while on shore excursions which would result in similar emergency situations.

65. It is foreseeable that such emergencies would occur and require proper evaluation and treatment, including appropriate triage in the event that the situation would require shore side examination, evaluation, and treatment.

66. Defendant owed Decedent a duty to use reasonable care in hiring and/or the retention of all medical personnel, including the ship's doctor and nurse. The Defendant had a duty to hire medical personnel who were adequately qualified, trained and experienced to work aboard ships and to conduct examinations and evaluations of medical emergencies which would require treatment aboard ships or which might require further evaluation and/or treatment by shore side facilities and/or shore side physicians.

67. That the ship's medical staff failed to properly assess and treat the Decedent when he was incapacitated and had to be transported back to the *Xpedition* via Zodiac.

68. The Defendant, Celebrity, breached its duty of care with regard to hiring and/or the retention of the ship's medical staff in one or more of the following ways:

   a. The Defendant negligently failed to conduct an appropriate investigation into the backgrounds of the medical staff to determine if they were qualified to practice emergency medicine and to handle evaluations and treatments of heart attacks.

   b. The Defendant negligently failed to hire medical personnel that had appropriate training and/or experience in emergency medicine, including treating a heart attack.

   c. The Defendant negligently failed to hire medical personnel which were qualified and/or sufficiently trained in the use of defibrillators that were aboard the *Xpedition*, which could have been used to treat the Decedent for his heart attack.

   d. The Defendant negligently failed to provide appropriate training and procedures to the medical staff for use of the defibrillators that were on the ship.

   e. The Defendant negligently retained the medical staff without providing the appropriate training and procedures for triage and referral to shore side facilities or physician.

69. As a direct and proximate result of the negligence of the Defendant, the Decedent did not receive competent medical care, as a result of which his condition deteriorated and he passed away.

70. As a direct result of the Defendant's negligence, the Plaintiff, SANDRA DELVIN as wife of her deceased husband, CARL FROEHLICH, has in the past and will in the future suffer losses, including medical, funeral and burial expenses due to her husband's death that have become a charge of her Estate and/or that have been paid on behalf of the decedent, all damages allowable under Florida Law and Florida's Wrongful Death Act, loss of net accumulations of the Estate, loss of consortium, guidance, and instruction, loss of support and services, and mental pain and suffering

**WHEREFORE**, SANDRA DELVIN, as Personal Representative for the Estate of CARL FROEHLICH demands judgment against the Defendant, CELEBRITY CRUISES, INC., for damages, costs of this action, and other further equitable and legal relief as this Court may deem appropriate, along with a trial by jury on all issues so triable.

## COUNT VI – NEGLIGENT HIRING, RETENTION AND TRAINING BY CELEBRITY AS TO EDWIN ALBA

71. Plaintiff re-alleges and readopts the allegations in paragraphs 1-19 as though alleged originally herein.

72. It is foreseeable to the Defendant that that passengers like the Decedent would suffer a heart attack, or other medical conditions, while on shore excursions which would result in similar emergency situations.

73. It is foreseeable that such medical conditions would occur and require appropriate emergency responses, including triage in the event that the injury would require shore side examination, evaluation and treatment.

74. The Defendant, Celebrity, owed Decedent a duty to use reasonable care in hiring and/or retaining its staff, including the naturalists in charge of the shore excursions that their passengers would take part in. The Defendant had a duty to hire naturalists who were adequately qualified, trained and experienced to deal with such situations.

75. Edwin Alba failed and/or refused to provide medical assistance to Decedent, while Decedent's condition manifested and/or while he was incapacitated.

76. The Defendant, Celebrity, breached its duty of care with regard to hiring and/or retaining Edwin Alba in the following ways:

   a. The Defendant negligently failed to conduct an appropriate investigation into the background of Edwin Alba to determine if he was qualified to lead the shore excursions and deal with potential emergencies such as this one.

   b. The defendant negligently failed to hire naturalists that had appropriate training and/or experience in dealing with emergency medical situations such as a heart attack.

   c. The Defendant negligently failed to hire a naturalist that was qualified and/or sufficiently trained and experienced in responding to emergency situations.

   d. The Defendant negligently failed to provide appropriate training and procedures to Edwin Alba dealing with emergency situations.

   e. The Defendant negligently retained the Edwin Alba without providing appropriate training and procedures for triage and referral to shore side facilities or physician.

77. As a direct and proximate result of the negligence of the Defendant, Decedent did not receive competent medical assistance, and as a result passed away.

78. As a direct result of the Defendant's negligence, the Plaintiff, SANDRA DELVIN as wife of her deceased husband, CARL FROEHLICH, has in the past and will in the future suffer losses, including medical, funeral and burial expenses due to her husband's death that have become a charge of her Estate and/or that have been paid on behalf of the decedent, all damages allowable under Florida Law and Florida's Wrongful Death Act, loss of net accumulations of the

Estate, loss of consortium, guidance, and instruction, loss of support and services, and mental pain and suffering.

**WHEREFORE**, SANDRA DELVIN, as Personal Representative for the Estate of CARL FROEHLICH, demands judgment against the Defendant, CELEBRITY CRUISES, INC., for damages, costs of this action, and other further equitable and legal relief as this Court may deem appropriate, along with a trial by jury on all issues so triable.

DATED this ___5th___ day of July, 2016.

        **GOLDBERG & ROSEN, P.A.**
        Counsel for Decedent
        1111 Brickell Avenue-Suite 2180
        Miami, Florida 33131
        Tel:(305) 374-4200 / Fax:(305) 374-8024

BY____/s. *Judd G. Rosen*_____
        Judd G. Rosen, Esq., Fla. Bar No. 0458953
        Primary E-mail:  pleadings@goldbergandrosen.com
        Secondary E-mails: jgrsecy@goldbergandrosen.com
        jgrefiling@goldbergandrosen.com